## HUDSON v. JONES et al.

(Court of Civil Appeals of Texas. Galveston. Dec. 16, 1911.)

1. VENDOR AND PURCHASER (§ 232*)—BONA FIDE PURCHASERS—POSSESSION AS NOTICE.

Where defendant, to plaintiff's knowledge, was in possession, claiming under a verbal contract of sale from the common grantor, and had made valuable improvements and paid all of the purchase money, the question of the record of the deeds of the common grantor to those through whom plaintiff claimed and of the deed to plaintiff was immaterial.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–562; Dec. Dig. § 232.*]

2. COSTS (§ 238*)—COSTS ON APPEAL—IMMATERIAL ERROR.

The finding that appellee had paid all but $17.25, erroneous in that he still owed $23.25, which error seemed a miscalculation by the court which might have been corrected if called to its attention by a motion for new trial, should not result in taxation of costs on appeal against appellee.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 908–919; Dec. Dig. § 238.*]

3. VENDOR AND PURCHASER (§ 187*) — DEFAULT IN PAYMENT—FORFEITURE.

Where defendant, in possession under oral contract of sale and still owing $80, agreed to pay at the rate of $10 a month, but the owner accepted much less for several months, and after the eight months had expired accepted

$20, it was a waiver of compliance, and he could not assert a forfeiture.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 374, 375; Dec. Dig. § 187.*]

4. VENDOR AND PURCHASER (§ 186*) — DE-FAULT IN PAYMENT—FORFEITURE.

Where vendee, who was in possession under an oral contract of sale, requiring stipulated payments under penalty of forfeiture, which was waived by frequent acceptance of partial payments, believed that he had paid the full amount, but alleged that, if he had not done so, he was ready to pay, it was proper for the court to allow him to pay the balance on such terms as would secure a prompt payment to the owner, and permit defendant to keep the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 373; Dec. Dig. § 186.*]

5. VENDOR AND PURCHASER (§ 232*)—BONA FIDE PURCHASERS—POSSESSION AS NOTICE.

Possession by defendant under an oral contract of purchase, known to plaintiff, who purchased from the common grantor, was notice to plaintiff of whatever right the defendant possessed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–562; Dec. Dig. § 232.*]

Appeal from District Court, Orange County; W. B. Powell, Judge.

Trespass to try title by I. W. Hudson against Richard Jones and others. From a judgment for defendants, plaintiff appeals. Reformed and affirmed.

Bisland, Adams & Bruce, for appellant.

REESE, J. This is an action in trespass to try title by I. W. Hudson against Richard Jones and wife to recover a certain lot of ground in the city of Orange described as lot 18 in the west half of block E in the amended Sheldon survey of the city of Orange. Defendants pleaded not guilty, and also by special plea claimed title under an alleged verbal contract of sale of the lot to him by H. B. Jackson on a credit, alleging that he had been put in possession of the lot by Jackson, had made valuable improvements on the faith of said sale, and had paid the purchase money, but offered to pay whatever might be found to be due in case it should be determined that he had not paid all of the purchase price. Various payments are set out specifically in the answer. It is also alleged that, by agreement between Jackson and one Pattillo, Pattillo had paid Jackson what defendants owed, and defendants were to pay Pattillo, and that when paid for they should receive a deed for the lot. Upon trial without a jury the court rendered judgment for defendants for the lot, and in favor of plaintiff for $17.25 found to be still due, and which had been tendered by defendants to plaintiff. No briefs are on file for appellee. The court filed conclusions of fact, which, with some corrections suggested by assignments of error addressed thereto, are adopted by us as our conclusions of fact.

H. B. Jackson is common source of title. H. B. Jackson sold the lots in controversy to Richard Jones on the 1st day of May, 1906, for $10 cash and $165, to be paid monthly at the rate of $10 per month, and, when paid for, Jackson was to make him a deed to the same. From the time of said purchase up to and inclusive of September 5, 1908, the said Jones paid to said Jackson all he owed on the place except $46.80. He did not pay $10 every month, but some months less and some months more, but, as he made said payments, they were placed or entered in a memorandum book by Jackson for said Jones as a payment on said lot. H. B. Jackson sold his holdings in Orange county, and in November, 1908, was preparing to move to Houston and demanded of said Jones, the defendant, that he pay the balance due on said lot, $46.80, and said Jones was unable to do so. On November 27, 1908, Jones went to J. E. Pattillo and made arrangements for him to pay Jackson the $46.80, and agreed to pay Pattillo $80 for that amount in eight months by paying $10 a month. The negro Jones understood from Jackson that he would so arrange the matter that, when he paid Pattillo $80, he was to get his deed. Pattillo settled with H. B. Jackson and Jackson made him, Pattillo, a deed to the lot, and said Jones began then to pay Pattillo for the place under his contract. On the 1st day of August, 1909, Pattillo told Jones the time was up and he wanted his money, and on that day Jones paid Pattillo $20, and told him he had a job that he would finish in three days or less time, and he would then pay him the balance $17.25, which Pattillo said would be all right. On the second or third day thereafter Jones tendered to said Pattillo the $17.25, and he refused to accept it, and claimed that the place was his as Jones had not paid the $80 in eight months. After Pattillo paid Jackson for recording of deeds and some incidental expenses connected or appertaining to the deal between Pattillo and Jackson whereby he took up Jones' indebtedness, Jones agreed to pay $5 more, making $85 he agreed to pay Pattillo, and he paid him $61.75 and tendered him $17.25, which he refused to take. H. B. Jackson made and delivered to J. E. Pattillo a deed to the lot in controversy, with a recited consideration of $175, but nothing was paid but the amount due Jackson by Jones, and that was the real consideration for the deed and place as between Jackson and Pattillo, and was so understood by the said Jones. On the 12th day of March, 1910, Pattillo sold the same place to plaintiff, I. W. Hudson, and gave him a deed therefor, reciting consideration as $200, of which $10 was cash and $190 evidence by vendor's lien notes payable at the rate of $10 per month. None of said notes

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

have been paid because the defendant refused to give possession of the place. The deed to Hudson was not recorded, and defendant did not know of its existence until the possession of the place was demanded. H. B. Jackson put the defendant Jones in possession of the place under an oral sale. He has been in possession of it ever since, and has placed valuable improvements on the same, and he has paid and tendered full payment of the purchase money and more, and the plaintiff had full notice of defendant's claim before he bought.

By the first and second assignments of error appellant complains of the sixth finding of fact, that neither the deed from Jackson to Pattillo, nor the deed from Pattillo to Hudson, were recorded, and also the finding that appellee did not know of their existence until the suit was filed.

[1] So far as concerns the deed from Jackson to Pattillo, we are inclined to think that the court was in error in finding that appellee did not know of the existence of this deed, and the record positively shows that it was filed for record on the day of its date, nearly two years before the suit was filed. In our conclusions of fact, we have, therefore, omitted this finding as to the deed from Jackson to Pattillo. Appellant has not undertaken to show that the finding is incorrect as to the deed from Pattillo to appellant. We regard this finding as to either deed as wholly immaterial. Appellee is in possession, claiming the lot sued for under a verbal contract of sale made with Jackson, having gone into possession, made valuable improvements and paid all of the purchase money except a very small portion, even under appellant's contention, and offering to pay whatever may be found due. We cannot see how his rights could be affected by the record of the deeds in question, or appellee's knowledge of them. Appellant has not undertaken to show in his brief the materialty of these findings, and, while the assignments are sustained as to the deed from Jackson to Pattillo, this does not affect the result of this appeal.

We also sustain the third assignment of error, by which objection is made to the finding that appellee had paid $67.75 to Pattillo. We are inclined to think that the pleadings of appellee and the evidence show that he had only paid $61.75, and have corrected the findings accordingly. This would leave still due $23.25, instead of $17.25, as found and adjudged by the court, and the judgment will be reformed accordingly.

[2] This appears to have been the result of a miscalculation by the court, and would have been corrected if called to the court's attention by a motion for a new trial. No motion was filed. We do not think that this slight error, which could and should have been corrected in the court below, should result in taxation of costs of this appeal against the appellee.

[3, 4] Although it may have been stipulated in the agreement between Pattillo and appellee that appellee should pay $80 at the rate of $10 per month, failing in which the lot should belong to Pattillo (although the court does not so find), it is shown that Pattillo did not require strict compliance with this agreement. He accepted much less than that amount for several months, and, after the eight months had expired, he accepted $20 paid by appellee. This was a waiver of strict compliance with the conditions. . The condition was in the nature of a forfeiture and a very harsh forfeiture, after nearly all of the purchase money had been paid, and improvements of considerable value placed on the lot. Forfeitures are not favored in equity. If Pattillo desired to avail himself of this condition and declare a forfeiture of all previous payments, upon failure to comply on the part of appellee, it was incumbent upon him to act promptly upon the first failure, and certainly not to have received the $20 paid after the expiration of the eight months. It would be inequitable to allow him, after having received a part of the purchase money after the expiration of the eight months, now to insist upon a strict compliance of that part of the contract, by exacting the forfeiture of the amount paid. In the present case, appellee alleged that he had paid all of the money due, but that, if he was mistaken and it should be found that there was a balance due, he offered to pay the same. Under these allegations, supported by proof, it was proper for the court to allow appellee to pay the balance on such terms as would secure the prompt payment to appellant, and to keep the property. Under the facts of this case, it would have been harsh and inequitable to have turned appellee out, and adjudged the property to appellant because appellee had not paid into court all that was found to be actually due. This disposes of the fourth and fifth assignments of error, which are overruled.

[5] By the seventh assignment of error, appellant complains of the conclusion of law of the trial court that the possession of appellee put appellant on notice of whatever right appellee had to the property. There is no merit in the assignment and it is overruled.

The eighth assignment of error presents the proposition that the court erred in rendering judgment for the defendant. In the propositions under the assignment appellant assumes that the right of appellee was an "unenforceable equity." We do not consider it so, as we have endeavored to show. The assignment and the several propositions thereunder have been carefully considered and are severally overruled.

Our conclusion is that the judgment should be reformed, so as to adjudge to appellant $23.25, instead of $17.25, as adjudged by the court below, and that he have a lien upon the lot in controversy to secure the payment

of same, and as so reformed should be affirmed, and it is so ordered.

Affirmed.